JORDAN v. FEDERAL COMPRESS & WAREHOUSE Co. et al.

(Division A. Feb. 10, 1930. Suggestion of Error Overruled, Mar. 10, 1930.)

[126 So. 31. No. 28162.]

May, Sanders, McLaurin & Byrd, of Jackson, and White & McCool, of Canton, for appellant.

J. M. & F. G. Thomas, of Tupelo, for appellees.

W. H. & R. H. Powell, of Canton, for appellees.

**Cook, J.**, delivered the opinion of the court.

The appellant, R. L. Jordan, filed a bill of complaint against the Federal Compress & Warehouse Company and the Grenada Cotton Compress Company, seeking to recover the sum of twenty-five thousand dollars, the admitted value of two hundred and eighty-four bales of cotton which he had stored in a public bonded warehouse located at Canton, Miss., and which was destroyed by fire on May 21, 1926; and, from a decree dismissing the bill of complaint, this appeal was prosecuted.

The bill of complaint, alleges that prior to May 21, 1926, the appellant deposited two hundred and eighty-four bales of cotton for storage in a warehouse located at Canton, Miss., and owned by the Grenada Compress Company, and which was afterwards, and before its destruction by fire, acquired by the appellee Federal Compress & Warehouse Company, and that he received a receipt for each separate bale of cotton so stored. The bill of complaint further alleged proper demand for the surrender of the cotton or the payment of the value thereof, and proper offer to pay all charges against the cotton and surrender the receipts therefor, and the refusal of the appellee to surrender the cotton or pay the value thereof, and averred that the appellees were unable to deliver the said cotton, for the reason that it had been destroyed by fire.

The appellees answered the bill, and admitted that the warehouse had been formerly owned by the Grenada Compress Company, and that the same had been sold to the Federal Compress & Warehouse Company, and was

being operated by it at the time of the destruction of appellant's cotton. The answer further admitted that appellant's cotton had been destroyed by fire, but denied appellees' responsibility and liability therefor, and asserted that they were free from negligence, and had exercised such care in regard to the warehouse and the cotton stored therein as a reasonably careful owner of similar goods would have exercised with regard to cotton of his own.

In support of his right to recover, the appellant offered evidence to show that he deposited his cotton with the warehouse company and received receipts therefor; that he paid the lawful warehouse charges, and was ready, willing and able to pay any additional charges the appellees might have against him on account of the storage of his cotton, and that he was ready and willing to execute such receipts and releases as might be required for delivery to him of the cotton, or the payment of its value; and he also proved the value of the cotton destroyed. The appellees undertook to meet the burden of showing the existence of a lawful excuse for their failure to deliver the cotton, or, in other words, that they had exercised such care in regard to the cotton as a reasonably careful owner of similar goods would exercise, by showing in great detail the character of the building in which the cotton was stored, its equipment, and the precautions which had been taken to prevent the introduction and spread of fire in the warehouse. This testimony is voluminous, and there is little if any conflict therein, and it could serve no useful purposes to set it forth here in detail.

The fire occurred at or about twelve-ten p. m., at a time when all the employees except the noon hour watchman were away from the building. The warehouse was a wooden building located near the line of the Illinois Central Railroad, and near the railroad station at Canton, and had public streets on two sides thereof. The

building was divided into three compartments, the dividing walls being constructed of brick, with automatic doors leading from one compartment to the other, which closed in case of fire in one compartment; and at the time of the fire there were about six thousand bales of cotton in the warehouse, and about two thousand bales in the only compartment which was burned. The testimony covered with great particularity every detail of the construction of the building, both external and internal, including a description of each and every opening through which fire might have been introduced into the building, the type and amount of equipment provided for extinguishing fire, including the number and location of barrels of water, buckets, and also fire hydrants and hose within and without the building, and also the character of service required of the night watchman, and a watchman provided for the noon hour, or from twelve to one o'clock in the daytime. The testimony also developed the facts with reference to the ginning of all cotton delivered to the compartment where the fire originated within forty-eight hours previous to the fire, so as to exclude the possibility of gin fire. The appellee also offered the evidence of the engineer of the State Fire Insurance Rating Bureau, and other insurance experts, who described in detail the various classifications of approved construction of cotton warehouses, and also the type of construction and the classification of the warehouse involved herein, and who testified that it met all the requirements of the insurance companies with reference to that particular classification.

The engineer of the Mississippi Rating Bureau, who was on the scene before the fire was finally extinguished, also testified that he made a complete examination and investigation in an effort to determine the origin of the fire, and that he was unable to discover or give any reasonable explanation as to the cause or origin thereof, and upon the entire record there is nothing to show or tending to show how the fire originated. The fire sud-

denly flared up some distance from either wall of the compartment that was burned, and rapidly spread through all the cotton stored in this compartment.

Upon the entire testimony offered by the appellees, and after an inspection of the premises and location of the warehouse in question, the chancellor reached the conclusion, and held, that the appellees had met the burden imposed of showing that they had exercised such care in regard to the warehouse and the cotton stored therein as a reasonably careful owner of similar goods would have exercised, and we are of the opinion that, in so far as the origin of the fire was concerned, the conclusion of the chancellor is supported by the evidence.

The appellant correctly contends, however, that the duty imposed upon the appellees as warehousemen by section 21, Uniform Warehouse Receipts Act (Section 9557, Hemingway's 1927 Code), did not end with the exercise of the required degree of care to prevent the origin of fire in the warehouse, but required the same degree of care to prevent the spread of fire after it had originated, and that the failure of the appellees to install an automatic sprinkler system in the warehouse to prevent the spread of fire was such negligence as rendered them liable for the loss and destruction of the cotton.

The evidence shows that appellees' warehouse was not equipped with an automatic sprinkler system, and that such sprinklers are very effective in checking the progress of fire in a cotton warehouse, and are very serviceable in extinguishing it, and that the installation of such a system very materially lessens the insurance rates on property stored therein. The proof further shows that at the time of the fire in the Canton warehouse there were fifty-six cotton compresses in this state which were operating warehouses for the storage of cotton; that of that number forty-four had no sprinkler systems, and that all these warehouses were under the supervision of three experienced and expert bureaus and associations,

which made frequent examinations of their equipment, method of operation, and custom and usage in connection with the handling of cotton, and the care exercised to prevent fires. The proof further shows that all, or practically all, of the cotton stored in the appellees' warehouse, had been sampled by cutting the bales on each side, thereby causing the cotton to protrude in what is called a "bloom," and that cotton in this condition is highly inflammable, and, when fire breaks out in cotton stored in this condition, it spreads with great rapidity, and will get beyond control in a very short time unless water is quickly applied.

In support of his contention that under the facts in this record, the failure of the appellees to install an automatic sprinkler system was such negligence as would render them liable for the loss of his cotton, the appellant relies principally upon the cases of Tubbs v. American Transfer & Storage Co. et al. (Tex. Civ. App.), 297 S. W. 670, and Cox v. Central Vermont Railway Co., 170 Mass. 129, 49 N. E. 97; but in each of these cases it was merely held that the question of whether or not the failure to install such a system was negligence was one for the consideration of the jury, in connection with all the other facts in evidence. We cannot say, as a matter of law, that the failure of the appellees to install a sprinkler system in this warehouse was a breach of its statutory duty to the appellant. What constitutes the care that would be exercised by a reasonably careful owner of similar goods, similarly situated, is a question of fact, to be judged by reference to all the circumstances of the particular case, considering the nature and character of the property, its exposure to damage or loss, its proximity to danger from fire, the means employed to prevent or arrest the progress of fire, and the location, character, and construction of the warehouse in which the property was stored. While the presence or absence of an automatic sprinkler system in the warehouse would be a material fact to be considered in connection with

all the other facts and circumstances to determine whether, in a particular case, a warehouseman had exercised the care which a reasonably careful owner of similar goods would exercise, and in some cases the absence of such a sprinkler system might be held to be negligent, yet if, in the absence of such a sprinkler system, the facts show that the warehouseman otherwise exercised such care in regard to the property as a reasonably careful owner of similar goods would exercise, there is no liability for the loss of such goods. The court below, as the trier of facts, found upon the whole evidence that the appellees had exercised that degree of care and prudence required by law to prevent or lessen the damage to appellant, and we are unable to say that the court's conclusion in that regard is not supported by the evidence. The decree of the court below will therefore be affirmed.

Affirmed.